# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 04-22572-CIV-KING

EMMA YAIZA DIAZ; JOHN A. LANMAN;
AMERICAN FEDERATION OF LABOR
AND CONGRESS OF INDUSTRIAL
ORGANIZATIONS; AMERICAN FEDERATION
OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO; FLORIDA
PUBLIC EMPLOYEES COUNCIL 79,
AFSCME, AFL-CIO; and SERVICE
EMPLOYEES INTERNATIONAL
UNION,

       Plaintiffs,

v.

SUE M. COBB, Secretary of State of Florida;
BRENDA SNIPES, Broward County Supervisor of
Elections; JERRY HOLLAND, Duval County Supervisor
of Elections; LESTER SOLA, Miami-Dade
Supervisor of Elections; BILL COWLES, Orange County
Supervisor of Elections; and ARTHUR ANDERSON, Palm
Beach County Supervisor of Elections,

       Defendants.
_____/

## ORDER ON MOTION TO DISMISS

This Cause is before the Court upon Defendants' Motions to Dismiss the

-1-

Third Amended Complaint (DE # 176, 177, 178, 179), filed August 14, 2006.[1]

## I.  Factual Background

Individual Plaintiffs Diaz and Lanman registered to vote in the fall of 2004. Plaintiff Diaz was informed orally on October 6, 2004, and in writing two days later, that her application had been rejected for failure to check the box on the application affirming that she had not been adjudicated mentally incapacitated.  Plaintiff Lanman alleges that he has received no communications from the Orange County Elections Supervisor concerning his application, but that county records indicate that his application was rejected for failure to check the boxes on the application affirming that he had not been convicted of a felony and had not been adjudicated mentally incapacitated.  Plaintiff Diaz recently submitted a new voter application, checking the requisite boxes (see DE # 175).

The Organization Plaintiffs allege that several of their members' voter applications were improperly rejected in 2004, on the basis of failure to check one or more boxes.

---

[1] Plaintiffs responded (DE # 185) on September 1, 2006.  Defendant Sue Cobb replied (DE # 187) on September 8, 2006.  Defendant Lester Sola replied (DE # 191) on September 19, 2006.  Defendants Snipes, Holland, and Cowle replied (DE # 192) on September 22, 2006.  Both parties argued this Motion before the Court on November 17, 2006 (DE # 196).

## II.  Procedural Background

On October 12, 2004, three weeks before the November 2, 2004, general election, Plaintiffs[2] filed their initial Complaint (DE #1) challenging the denial of their voter applications and seeking injunctive relief.  Defendants Palm Beach County, the Secretary of State, Broward County, Miami-Dade County, and Orange County, filed separate Motions to Dismiss (DE # 32, 36, 37, 38, 39) on October 19, 2004.  Oral argument on the Motion for Preliminary Injunction (DE # 68) was heard October 22, 2004.  Since the issues raised, and the relief sought, could have seriously affected the national (and state) election set a few weeks later, the Court addressed the issues on an extremely expedited basis.  With great cooperation, from all lawyers on both sides, the Motions (filed daily) were responded to within a few days, hearings with oral argument were held promptly (every few days), and the injunctive aspect of the case reached timely.

On October 26, 2004, two weeks after the Case was filed, the Court entered an Order (DE # 82) dismissing the complaint for lack of standing, without prejudice to file an amended complaint.  Plaintiffs elected not to exercise their right to file an amended complaint, but sought appellate review by filing a Notice of Appeal (DE # 86) the next day.

_____

[2] Not including Mr. Lanman, who was allowed to enter the Case pursuant to the Court's Order of May 11, 2006

Eleventh months later, on September 28, 2005, the Eleventh Circuit Court of Appeals vacated this Court's dismissal (DE # 100), with leave to amend, on the issue of standing, noting that the Florida Legislature had changed the law pertaining to voter registration in Florida while the Case was on appeal, and directed the Plaintiffs to file an amended complaint "taking into account the law as it presently exists."

Despite the clear language of the Opinion of the Eleventh Circuit, no action was taken to file an amended complaint or to move the Case forward, for the ensuing five months.  Even though another election was set for September 5, 2006, nothing happened until March 10, 2006 when the Secretary of State filed a Motion for a status conference (DE # 104), which was granted that day (DE # 102).

At the scheduling conference on March 27, 2006 (DE # 112), the Court heard oral argument and granted, pursuant to the Appellate Mandate, Plaintiffs' *ore tenus* motion to amend the complaint.  The Second Amended Complaint (DE # 151) was filed on May 17, 2006.

On May 15, 2006, Miami-Dade Supervisor of Elections Lester Sola filed a Motion for More Definite Statement (DE # 149).  All of the other Defendants filed a joint Motion to Dismiss the Second Amended Complaint (DE # 150) the following day.  On May 31, 2006, the Court held oral argument (DE # 160) on Defendants'

Motion to Dismiss.  On June 20, 2006, the Court granted Defendants' motion to dismiss Plaintiffs' statutory claims and all claims for conduct in 2004 against the Secretary of State, and Defendant Sola's motion for more definite statement as to Plaintiffs' Federal Constitutional claims (DE # 167).  <u>Diaz v Cobb</u>, 435 F.Supp.2d 1206 (S.D. Fla. 2006).

On July 10, 2006, Plaintiffs filed their Third Amended Complaint (DE # 170), clarifying their claims under the United States Constitution.  The Third Amended Complaint alleges that: (1) Defendant (Broward, Miami-Dade and Palm Beach County) Supervisors' failure to provide adequate notice and an opportunity to correct Plaintiffs' applications in 2004 deprived Plaintiffs of their right to vote under the First and Fourteenth Amendments (Count I); (2) based upon current State law and policy, Defendants will fail to timely notify applicants and will fail to provide a grace period during which omissions can be cured after the close of books, resulting in the denial of the right to vote in violation of the First and Fourteenth Amendments (Count II); and (3)  the language accompanying the mental incapacity checkbox is so confusing and useless that refusing to process applications for failure to check said box violates the right to vote under the First and Fourteenth Amendments (Count III).

### III.  STANDARD OF REVIEW

A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief.  "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'"  Bradberry v. Pinellas County, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff.   Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims."  Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986).

### IV.  The Motions to Dismiss

On August 14, 2006, Defendants moved to dismiss Plaintiffs' Third Amended Complaint (DE # 176, 177, 178, 179)  on the following grounds: (1) mootness; (2) failure to state a claim upon which relief can be granted; and (3) Eleventh Amendment immunity.

### *1.  Mootness*

In this Motion, Defendants allege that Plaintiff Diaz's successful voter registration moots her injunctive claims.  Plaintiffs, on the other hand, insist that Diaz's injunctive claims fall under an exception to the mootness doctrine: they are "capable of repetition yet evading review." (Pls.' Opp'n to Mot. to Dismiss at 18 n. 6.)

Generally, "a case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief."  Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998).  An exception to the mootness doctrine arises when an injury is "capable of repetition yet evading review."  Teper v. Miller, 82 F.3d 989, 992 (11th Cir. 1996). This exception applies when, "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action."  Weinstein v. Bradford, 423 U.S. 147, 149 (1975). As election periods are generally too short in duration to be fully litigated, the Eleventh Circuit has applied this exception to many cases involving disputes over election-related laws.   See, e.g., ACLU v. The Florida Bar, 999 F.2d 1486 (11th Cir. 1993).

In this case, however, the exception does not apply because there is no reasonable expectation that Ms. Diaz will again have problems with her registration. Voter registration in Florida is permanent; once a voter is registered, she does not have to re-register to vote in subsequent elections.  Even if Ms. Diaz did re-register, for example if she left the state and later returned, having already successfully completed a voter registration application, she would understand how to complete her application correctly the second time.   Therefore, there is no reasonable expectation that the same complaining party will again suffer the same action. Accordingly, Diaz's claims for injunctive relief are moot.

### 2.  Failure to State a Claim upon which Relief can be Granted

The Third Amended Complaint alleges three causes of action: (1) Defendants' refusal to provide voter registration applicants with an opportunity to cure voter application deficiencies, by failing to provide a grace period after the registration deadline, severely burdens Plaintiffs' Constitutional right to vote; (2) Defendants' failure to provide voter registration applicants with actual or meaningful notice that their application was incomplete severely burdens Plaintiffs' constitutional right to vote; and (3) requiring prospective voters to check a box affirming their mental capacity to vote severely burdens Plaintiffs' constitutional right to vote.

## A.  Grace Period to Amend Incomplete Applications.

Plaintiffs' allege that Defendant Supervisors' failure to provide applicants with a grace period, i.e. permit applicants to correct their incomplete voter registration applications after the book-closing date, stripped thousands of eligible applicants of their Constitutional right to vote in the 2004 and 2006 elections.

In 2004, thousands of eligible applicants, including Plaintiffs, submitted incomplete voter registration applications near or on the application deadline. Because the deadline for the initial application is the same as the deadline for completing any errors or omissions relating to the checkboxes, Plaintiffs were not permitted to submit missing information nor vote.  Id.  After the 2004 election, Florida amended its election code, statutorily prohibiting applicants who submitted incomplete voter registration applications from correcting their deficient applications after the book-closing deadline.  Fla. Stat. § 97.055 (2006).[3]  Plaintiffs allege that due to the same 2004 patterns of voter registration, the new Florida election code denied thousands of eligible applicants the right to vote in 2006.  Defendants, on the other hand, contend that a registration cut off deadline, without a grace period, is legitimate and constitutional.

Florida law specifies the book-closing date for each election.  According to

---

[3]"updates to a voter's name, address, and signature...shall be the only changes permitted for purposes of the upcoming election."

2006 Florida law, "[t]he registration books must be closed on the 29th day before each election and must remain closed until after that election."  Fla. Stat. § 97.055(1) (2006).  Thus, according to Florida law, any applicant wishing to vote in an election must submit his or her completed application at least twenty-nine days before that election.  After the twenty-nine day deadline has passed, applicants are unable to correct any deficiencies in their applications: there is no grace period.

It is well established that "a person does not have a federal constitutional right to walk up to a voting place on election day and demand a ballot."  Marston, 410 U.S. at 680.  Courts have continuously upheld substantial election regulation by states to avoid chaos and protect democracy.  See, e.g., id. ("States have valid and sufficient interests in providing for some period of time—prior to an election—in order to prepare adequate voter records and protect its electoral processes from possible fraud."); Storer v. Brown, 415 U.S. 724, 730 (1974) ("as a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process."); Rosario v. Rockefeller, 410 U.S. 752, 762 (1972) ("The preservation of the integrity of the electoral process is a legitimate and valid State goal.").

Specifically, pre-election registration deadlines have been routinely upheld as constitutional.  See, e.g., Marston v. Lewis, 410 U.S. 679, 680 (1973) (upholding

Arizona's fifty-day registration deadline because, "[t]he Constitution is not so rigid that that determination and others like it may not stand."); <u>Burns v. Fortson</u>, 410 U.S. 686 (1973) (following <u>Marston</u>, the Court upheld Georgia's fifty-day registration deadline); <u>Beare v. Briscoe</u>, 498 F.2d 244, 247 (5th Cir. 1974) (striking down a statutory provision requiring annual voter registration during a restricted four-month period, but acknowledging "the state's right to impose some reasonable cutoff point for registration...").

However, the constitutionality of each election regulation must be determined individually; there is no litmus paper test for Constitutional challenges to the election code.  <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 789 (1983).  When evaluating an election regulation, the Court must "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate."  <u>Id.</u>  Second, the Court "must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.  In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights."  <u>Id.</u>  The Supreme Court further emphasized that "[o]nly after weighing all these factors is the reviewing court in a position to decide whether the

-11-

challenged provision is unconstitutional." Id.[4]  Thus, this Court's inquiry must focus

on whether the particular deadline before it is justified.

In this instance, the state has not fulfilled its burden of proof.  Defendants

have not presented this Court with any justification for the state's legislative

judgment that a twenty-nine day cutoff, without a grace period, is necessary to

achieve the state's legitimate goals.  Defendants assert that Plaintiffs are not severely

burdened by a strict cut off date and discuss previous judicial determinations that

cut off deadlines are legitimate, but Defendants do not advance an explanation for

why this particular deadline is necessary in this particular state.  Without a complete

record on the state's reasons for this registration cut off date, the Court cannot make

a judicial determination on its legitimacy.  As discussed supra, the Court must

"identify and evaluate the precise interest put forward by the state as justifications."

Anderson 240 U.S. at 789.  It is only "after weighing all these factors [that] the

reviewing court [is] in a position to decide whether the challenged position is

---

[4]  See also Williams v. Rhodes, 393 U.S. 23, 30 (1968) ("consider the facts and
circumstances behind the law, the interests which the State claims to be protecting, and
the interests of those who are disadvantaged..."); Marston, 410 U.S. at 681 ("On the basis
of the evidence before the District Court it is clear that the State has demonstrated that the
50-day voter registration cutoff is necessary to permit preparation of accurate voter
lists.") Beare, 498 F. 2d at 246-47 ("In analyzing the statute, the Court emphasized that 'a
heavy burden of justification is on the State, and that the statute will be closely
scrutinized in light of its asserted purposes'....when compelling state interests are shown,
a minimum cutoff date for registration will be allowed.") (all emphases added).

unconstitutional." <u>Id.</u>  Defendants have not proven that Florida's twenty-nine day deadline, without a grace period, is reasonable as a matter of law.

### <u>B.  Notice of Incomplete Applications.</u>

Plaintiffs further allege that Defendant Supervisors' failure to give timely and adequate notice of incomplete applications to registrants is a severe burden on Plaintiffs' Constitutional right to vote.  Plaintiffs fear that a large number of applicants, who submit incomplete voter registration applications shortly before the voter registration deadline, will not be notified of the purported deficiencies in their application in time to correct them before the book-closing deadline.  (Third Am. Compl. ¶ 20.)  Since there is no grace period after the book-closing deadline, these applicants will be denied the opportunity to vote in the ensuing election.

Defendants allege that in an official-capacity, § 1983 action like this one "a governmental entity is liable...only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Ky v. Graham</u>, 473 U.S. 159, 166 (1985).  On the other hand, Plaintiffs assert that Defendant Supervisors can be held liable even if they have not adopted a formal "custom or policy" which deprives Plaintiffs of their constitutional rights.  (Pls.' Resp. to Mot. to Dismiss at

21.)  Instead, Plaintiffs assert that liability ensues if Defendant Supervisors engaged "in a course of action consciously chosen from among various alternatives."  Id. (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).

However, Plaintiffs did not engage "in a course of action consciously chosen from among various alternatives" because both Federal and State law have clearly articulated notice requirements that do not allow for any discretion.  Id.  Federal law "provides Supervisors of Elections with a minimum of twenty days from the date on which the application is received to notify an applicant who has supplied an incomplete application." (Third Am. Compl. ¶ 74.) (emphasis added).  In 2004, Florida Law required Supervisors to "request that the applicant [of an incomplete application] supply the missing information in writing and sign a statement that the additional information is true and correct."  Fla. Stat. § 97.073(1) (2004).  In 2006, Florida law became even more specific.  Currently, Supervisors are required to "notify the applicant of [their incomplete application] by mail within 5 business days after the supervisor has the information available in the voter registration system."[5] Fla. Stat. § 97.073(6) (2006) (emphasis added).  Thus, for the 2004 and 2006 elections, and in the future, Defendant Supervisors have twenty (20) days, at the

_____

[5]Under Florida law, voter registration officials have fifteen (15) days from the date of receipt of the application to enter it into the voter registration system.  Fla. Stat. § 97.053(7) (2006).

most, to notify applicants of their incomplete applications.  As discussed above, the law allows for no grace period: after the deadline has passed, applicants will not receive notice of an incomplete application or have an opportunity to cure it.

Under state and federal law, Defendant Supervisors have no discretion and cannot be held liable.  If an applicant submits a voter registration application more then 20 days before the voter registration deadline, the Supervisors have 20 days to notify an applicant of the incomplete application and the applicant can subsequently make corrections.  If an applicant submits a voter registration application less than 20 days before the deadline, that applicant may receive notice too late to make the appropriate corrections.  These actions are based on the law, not on Defendant Supervisors' own discretion: state and federal law prohibit Defendant Supervisors from providing notice more then 20 days after the applicant submitted the application or accepting updates to an incomplete voter registration application after the 29 day deadline.  Even under Plaintiffs' more lenient standard, Defendant Supervisors have no § 1983 liability because these statutes do not provide Defendant Supervisors with "various alternatives."

### C.  The Mental Capacity Checkbox Requirement.

Florida's voter registration application requires applicants to check the

-15-

following:

❑    **I affirm I have not been adjudicated mentally incapacitated with respect to voting or, if I have, my competency has been restored.**

Fla. Voter Registration Application.  Plaintiffs claim the above affirmation "does not conform with plain English guidelines" and discriminates against those registrants with lower levels of literacy and/or education because it is "unusually legalistic, technical and complicated in its construction and presupposes a high level of literacy." (Pls.' Opp'n to Mot. to Dismiss at 14.)  Plaintiffs argue that, due to the complex language, the mental capacity check box does not serve its alleged purpose of excluding persons adjudicated mentally incapacitated and preventing voter fraud. Id. at 4.  Thus, by rejecting applicants who did not check this box, Plaintiffs claim Defendants are excluding eligible applicants from voting for no legitimate or compelling state interest.  Id.

A mental capacity requirement may not be a familiar concept to many applicants, nonetheless, it relates to a settled limitation on voting rights in Florida. Florida Statute § 97.041(2) mandates that, "the following persons, who might be otherwise qualified, are not entitled to register to vote: a person who was been adjudicated mentally incapacitated with respect to voting in this or any other state and who has not had his or her right to vote restored pursuant to law."  Fla. Stat. §

97.041(2) (2006).  This Court has already held that the state of Florida has a

legitimate interest in this limitation on voting rights and that the checkbox is not

redundant nor immaterial.  (Order of Partial Dismissal at 18.)

Furthermore, States can require applicants to affirm their eligibility, thus the

state may refuse to register applicants who will not affirm their eligibility.  See

Clingman v. Beaver, 544 U.S. 581, 593 (2005) ("Many electoral regulations,

including voter registration generally, require that voters take some action . . . .").  If

an affirmation is required, an individual who refuses to affirm his eligibility to vote

cannot claim that the state's subsequent refusal to register him substantially burdens

his right to vote.  Instead, it is the applicant's refusal to affirm his eligibility that is

keeping him from voting.

The State does not have to prove that the mental capacity affirmation used is

the best or only way for the state to elicit mental capacity and prevent fraud.  The

Supreme Court explicitly rejected the idea that a court should "require elaborate,

empirical verification of the weightiness of the State's asserted justifications."

Timmons v. Twin Cities Area New Party, 520 U.S. 351, 364 (1997); accord Munro

v. Socialist Workers Party, 479 U.S. 189, 195-96 (1986) ("Legislatures, we think,

should be permitted to respond to potential deficiencies in the electoral process with

foresight rather than reactively, provided that the response is reasonable and does

-17-

not significantly impinge on constitutionally protected rights.").  The legislature has mandated that Florida voters be mentally capable, and, in its discretion, the legislature has determined that the checkbox properly elicits that information.

Although an affirmation of mental capacity is constitutionally permissible, Plaintiffs contend that the language of the mental capacity checkbox is so confusing it unconstitutionally disenfranchises voters.  Plaintiffs contend that the mental capacity checkbox confuses eligible applicants into leaving the checkbox blank and therefore does not actually provide any benefit to the state.  This confusion allegedly strips eligible applicants of their constitutional right to vote.

The Supreme Court held that "[e]ven when pursuing a legitimate interest, a state may not choose means that unnecessarily restricts constitutionally protected liberty."  Anderson, 460 U.S. at 806.  Thus, the language accompanying the mental capacity checkbox cannot be so confusing that it severely burdens Plaintiffs' constitutional right to vote.

Nonetheless, states have no constitutional obligation to employ the simplest language possible, they are given vast discretion to draft reasonable registration materials.  See Tashjian v. Republican Party of Conn., 479 U.S. 208, 217 (1986) (the Constitution grants states broad power to prescribe the manner of holding elections).  It is neither practical nor reasonable for Courts to subject all election

-18-

material to line-by-line, word-by-word scrutiny.  As some registrants are completely illiterate, even the most straightforward English would confuse them.  Thus, the Court is not evaluating whether this is the best possible language, but whether the questioned language is reasonable.

This Court finds that the language is reasonable.  The chosen language reasonably allows the State to determine whether a registrant is mentally competent: the questioned language is not arbitrary, it mirrors the language used in the Florida Statute, and it fulfills its stated purpose, it asks whether a person has "been adjudicated mentally incapacitated" and if he or she has had his or her capacity "restored" pursuant to law.  Fla. Stat. § 97.041(2) (2006); Voter Registration Application.  The State exercised its discretion in drafting the mental capacity checkbox in a manner that does not violate the Constitution.

Finally, the language of the mental capacity checkbox is not so confusing that it discriminates against those registrants with lower literacy.  This Court has already held that "while the language may be somewhat complicated, it does not...function as a literacy test."  (Order of Partial Dismissal at 18.)  If the language confuses applicants they "are free to request and receive (and others free to offer and provide) assistance in completing the application.  This means that an applicant need not 'demonstrate the ability to read, write, understand or interpret' anything, nor

'demonstrate any educational achievement.' 42 U.S.C. § 1973aa(b)."  Id. at 25.
This is even more true for Plaintiff Union members, who are in a unique position to
help each other with the application process and can explain the language to any
confused party.

The Court concludes that Florida's requirement that applicants affirm their
eligibility is reasonable, and the language used is not so confusing that it interferes
with any citizen's right to vote.  Thus, the mental capacity checkbox is not an
unconstitutional burden on Plaintiffs' constitutional right to vote.


### 3.  Eleventh Amendment Immunity

Defendants Snipes, Holland, Cowles, and Anderson argue that they are
immune from suit based on the Eleventh Amendment.  The Court finds it
unnecessary to rule on this issue until a later procedural date in these proceedings.


## V.  Conclusion

Accordingly, after a careful review of the Record, and the Court being
otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants Motions to Dismiss the
Third Amended Complaint be, and the same, are hereby DENIED in part and

-20-

GRANTED in part.  Plaintiff Diaz's claim for injunctive relief is **DISMISSED** as **MOOT**.  Plaintiffs' claim against Defendants for lack of timely notice to cure deficient applications is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted.  Plaintiffs' claim against Defendants for requiring voters to check a mental capacity affirmation is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted.  It is further

ORDERED and ADJUDGED that Defendants shall, within 30 days, answer Plaintiffs' Claim against Defendants for their failure to provide a grace period after the registration cut-off.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 27th day of February, 2007.

_James Lawrence King_
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

***Counsel for Plaintiffs***:
Mary Jill Hanson, Esq.
HANSON, PERRY & JENSEN, P.A.
400 Executive Center Drive, Suite 207
West Palm Beach, Florida 33401
Phone:      (561) 686-6550
Facsimile: (561)686-2802

Judith A. Browne, Esq.
Sheila Y. Thomas, Esq.
Elizabeth Westfall, Esq.
ADVANCEMENT PROJECT
1730 M Street, NW - Suite 910
Washington, D.C. 20036
Phone:      (202) 728-9557
Facsimile: (202) 728-9558

Elliot Mineberg, Esq.
PEOPLE FOR THE AMERICAN
 WAY FOUNDATION
2000 M Street, Suite 400
Washington, D.C. 20036
Phone:      (202) 467-2392
Facsimile: (202) 293-2672

Michael Halberstam, Esq.
Facsimile:  (212) 492-0111
Adam Skaggs, Esq.
Facsimile: (212) 492-0298
PAUL WEISS
1285 Avenue of the Americas
New York, NY 10019
Phone:       (212) 373-3000

Judith A. Scott, Esq.
John J. Sullivan, Esq.
SEIU
1313 L Street, NW

Washington, D.C. 20005
Phone:      (202) 898-3453
Facsimile: (202) 898-3323

Jonathan P. Hiatt, Esq.
AFL-CIO
815 Sixteenth Street, NW
Washington, D.C. 20006
Phone:      (202) 637-5053
Facsimile: (202) 637-5323

Manny Anon, Jr., Esq.
FLORIDA PUBLIC EMPLOYEES COUNCIL 79
3064 Highland Oaks Terrace
Tallahassee, Florida 32301
Phone:      (850) 222-0842
            or (305) 651-6617
Facsimile: (850) 224-6926
            or (305) 651-1740

Counsel for Defendants:
Jeffrey P. Ehrlich, Esq.
Susan Torres, Esq.
Miami-Dade County Attorney's Office
111 N.W. First Street, Suite 2810
Miami, Florida 33128
Phone:      (305) 375-5151
Facsimile: (305) 375-5634

Daniel S. Fridman, AUSA
99 N.E. 4th St.
Miami, Florida 33132
Phone: (305) 961-9083
Facsimile: (305) 530-7976

Juan C. Enjamio, Esq.
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500

-23-

Miami, Florida 33131
Phone:     (305) 810-2500
Facsimile: (305) 810-2460

George N. Meros, Jr.
Peter Antonacci, Esq.
GRAY ROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-1189
Phone:     (850) 577-9090
Facsimile: (850) 577-3311

Richard Perez, General Counsel
Department of State
The Capitol, PL-01
Tallahassee, Florida 32301
Phone:     (850)
Facsimile: (850) 245-6125

Eddie G. Labrador, Esq.
Broward County Assistant Attorney
Governmental Center
115 South Andrews Avenue, Room 423
Fort Lauderdale, Florida 33301
Phone:     (954) 357-7600
Facsimile: (954) 357-7641

Burnadette Norris-Weeks, Esq.
BURNADETTE NORRIS-WEEKS, P.A.
100 S.E. Sixth Street, Suite 6
Ft. Lauderdale, FL 33301-3422
Phone:      (954) 768-9770
Facsimile:  (954) 768-9790

Tracey I. Arpen, Jr., Esq.
Ernst D. Mueller, Esq.
Deputy General Counsel
Duval County

-24-

City Hall, St. James Building
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Phone:      (904) 630-1700
Facsimile: (904) 630-2388

Mike Cirullo, Esq.
Orange County Attorney's Office
3099 East Commercial Boulevard
Suite 200
Fort Lauderdale, Florida 33308
Phone:      (954) 771-4500
Facsimile: (954) 771-4923

Leon St. John, Esq.
Palm Beach County Attorney's
Office
301 N. Olive Avenue
West Palm Beach, Florida 33401
Phone:      (561) 355-2520
Facsimile: (561) 355-4398

Ronald A. Labasky, Esq.
LANDERS & PARSONS, P.A.
310 West College Avenue
Tallahassee, FL 32301
Phone:      (850) 681-0311
Facsimile: (850) 561-6834

Matthew Cohen, Esq.
Broward County Attorney's
Office
115 South Andrews Avenue,
Room 423
Ft. Lauderdale, FL 33301
Facsimile: (954) 357-7641